ROGERS *v.* CROWDER.

5-1616                                          315 S. W. 2d 914

Opinion delivered June 16, 1958

[Rehearing denied September 29, 1958.]

*A. A. McCormick,* for appellant.

*J. Sam Wood,* for appellee.

GEORGE ROSE SMITH, J. This controversy over the custody of a nine-year-old boy is between the child's father, the appellant, and the child's maternal grandmother, who was appointed as guardian for the boy after the death of his mother. This appeal is from the chancellor's denial of the father's petition for a change of custody.

The child's parents, Clinton and Wanda Rogers, were married in 1947 and were divorced in 1949. The divorce decree awarded the custody of the couple's six-month-old son to the mother and directed the father (the present appellant) to pay $15 a week for the child's support. Within fifteen days after the entry of the decree Rogers was jailed for failure to make the required weekly payments. Upon his promise to make proper arrangements for the infant's support Rogers was released a month later. He at once left the state, settled down in Oregon, and from that distant point ignored the order of support for about eight years. Rogers says that during those years he sent money from time to time to his former wife, although the decree required that the payments be made into the registry of the court. He did not, however, produce any canceled checks or other evidence that would convincingly corroborate his rather vague assertions that he made contributions toward the child's maintenance. The chancellor was justified in concluding that Rogers pretty well disregarded his responsibility as a father until the present petition was filed in November, 1957.

In the meantime Wanda Rogers, the child's mother, was left with the burden of providing for the infant. Wanda remarried within a few months after her divorce, but she and her second husband, a man named Curry, found it necessary to move into the appellee's home and to depend at least to some extent upon Mrs. Crowder for financial help. There can be no doubt that over a period of years Mrs. Crowder assisted in the care of her grandson and helped to meet the family expenses. In September of 1957 Curry killed his wife, Wanda, and then committed suicide; this tragedy was followed by

the appointment of Mrs. Crowder as the child's guardian, and later on the present petition for a change of custody was filed.

In refusing to change the existing arrangement the chancellor found by his decree: "That the child is nine years old, in good health, attends school regularly, and from his appearance in court on the day of this hearing seems to be well adjusted to being with his grandmother. That he obeyed her, was devoted to her, and appeared to look upon her as his own mother. That the testimony showed that the grandmother had reared the child in her home most of the time since his birth . . . That the defendant father is now married to a 23-year-old woman, has one child by this second marriage, and said wife is now pregnant with child. That this court had no opportunity to see this woman. That said woman did not appear in court, nor did she testify by deposition. That this court has no way of knowing whether she would be a fit mother for the nine-year-old boy or not. That apparently the boy has never seen this woman whom defendant asks that this court deliver the boy to, to rear him from now on. That this court has no assurance that the new wife would rear the child properly, see that he attended school or church, etc. That this court does not even know that the new wife would agree to rear the child at all, if defendant were allowed to take him back to Oregon with him."

As we view this record the appellant's contention narrows down almost entirely to the fact that he is the boy's father and therefore occupies a position that is *prima facie* superior to that of the child's grandmother. Even so, the many other circumstances disclosed by the proof so strongly support the trial judge's conclusion that we do not feel warranted in setting aside his decree. Our reluctance to differ with the chancellor is of course enhanced by the fact that he saw both the contending parties on the witness stand and thus had, in contrast to us, an advantage that is immeasurable in a case of this kind.

A minor contention is that the chancellor erred in overruling the appellant's demurrer to the intervention filed by Wanda Curry's administrator, who sought to recover the support payments that had accrued since the entry of the original divorce decree. This issue, however, has not yet been determined on its merits, and of course an order that merely overrules a demurrer is not a final judgment from which an appeal may be taken. *Ark. State Bd. of Architects* v. *Larsen,* 226 Ark. 536, 291 S. W. 2d 269.

Affirmed.